Ken CATTON, individually and on behalf of all others similarly situated, Plaintiffs,

v.

McDONNELL DOUGLAS CORPORATION, a corporation, Defendant.

No. CV 78–3341–AAH (Tx).

United States District Court, C. D. California.

June 24, 1981.

Cantrell & Green, Inc., Long Beach, Cal., for plaintiffs.

Munger, Tolles, & Rickershauser, Los Angeles, Cal., for defendant.

HAUK, Chief Judge.

This cause came on to be heard on the Motion for Summary Judgment of Dismissal of defendant. The Court having considered the pleadings thereon, having heard the argument of counsel, and being fully advised in the matter, finds the facts and states its conclusions of law as follows:

## FINDINGS OF FACT

1. The instant lawsuit arises out of an alleged breach of the terms of a collective bargaining agreement entered into between the McDonnell Douglas Corporation and the International Union, United Automobile, Aerospace and Agricultural Employment Workers of America and its Local 148 (hereinafter referred to together as the "Union").

2. Included in the final offer by MDC was a proposal to increase the basic benefits under the Employee Retirement Income Plan—Hourly ,West, retroactive to January 1, 1978. MDC's offer to the Union was ratified April 17, 1978; UAW Local 148 signed the agreement in mid-September 1978; and the retroactive benefit increases were paid on October 1, 1978. The regular January through September retirement benefits were paid on schedule.

3. A period of from four to seven months to implement the retroactive increases was consistent with past practices. Increases in retirement benefits had also been negotiated by MDC with the UAW and its Local 148 in 1971 and 1975. In 1971, agreement was reached with the Union in December 1971 and payment of the benefit increases, retroactive to January 1972, was implemented in June 1972. In 1975, agreement with the Union was reached in February 1975 of payment of the benefit increases, retroactive to January 1975, was implemented in June 1975. No interest was paid on such retroactive payments and none was sought.

4. The reason for this time interval prior to implementation was known to the Union and resulted from the fact that modification of the retirement plan requires substantial administrative work by MDC's pension administrators prior to implementing any negotiated increase and by the fact that the Employe Retirement Income Plan—Hourly West is applicable to employees in many bargaining units other than the UAW bargaining units. As a result, retroactive increases negotiated with one union

could not be implemented until MDC had discharged its bargaining obligations with each of the other unions or until the beneficiaries with regard to that particular negotiation could be identified. At the time of the negotiations between MDC and the Union in 1971 and 1975 (and 1978 as well) the retiree files maintained by MDC did not identify a retiree's former union representation, if any. As a result, MDC could not identify the UAW Local 148 represented retirees from among the more than 13,000 retirees under the Plan and hence payment to the UAW Local 148 retirees could not be made until some four to seven months after negotiations with Local 148 had been concluded, this interval being necessary to permit MDC to make the necessary administrative adjustments and to fulfill its bargaining obligations toward the other unions with members in the Plan.

5. The facts set forth in paragraph 4 above continued to exist with regard to the retroactive retirement increases negotiated in 1978.

6. During the negotiating sessions between MDC and the Union which concerned retirement benefits and which culminated in an agreement in April of 1978 no demand was made by the Union for the payment of interest upon the retroactive benefit increases ágreed upon; there was nó discussion of when the retroactive payments could actually be sent to the eligible retirees; there was no discussion of whether interest would be paid on the retroactive increases; and there was no agreement by MDC to pay interest with regard to such retroactive payments.

7. In 1978 the UAW was the first union with which MDC reached agreement. In accordance with its past practice and for the reasons set forth in paragraph 4 above, payment of the retroactive increases to the UAW-represented retirees (including those represented by Local 148) could not be made until MDC had reached agreement with its other unions, until it had negotiated sufficiently with those other unions to satisfy its obligations to bargain in good faith with those unions concerning any

changes to be made in the Plan, or until MDC could somehow segregate out those retirees with regard to which it had not discharged its bargaining obligation. As a practical matter, however, MDC's retiree records in 1971–72, 1975, and 1978 were not maintained in such a way as to permit such segregating out. Thus increases in payments could not be made until MDC had had sufficient negotiations with each of the relevant unions.

8. During 1978, agreement was reached with the International Association of Machinists and Aerospace Workers, Industrial District Lodge 720 on May 22, 1978; with the District Council of Painters 36, Brotherhood of Painters, Decorators and Paperhangers of America on June 5, 1978; with the International Brotherhood of Electrical Workers, Local 584 on June 19, 1978; with the United Plan Guard Workers of America, Local 800 on June 19, 1978; with the United Plan Guard Workers of America, Local 159 on June 26, 1978; with the American Federation of Guards, Local 1 on July 3, 1978; and with the Douglas Association of Security Officers on July 3, 1978.

9. Although the collective bargaining agreement between MDC and the Union was ready for signature by UAW Local 148 on approximately April 26, 1978, the Local did not sign the agreement until the middle of September 1978. By this time MDC had reached agreement (as set forth in paragraph 8 above) with all of the Unions whose members were beneficiaries of the Employe Income Retirement Plan—Hourly West except the International Union of Operating Engineers, Locals 501 and 42, the Southern California Professional Engineering Association—Technical Employes and the International Brotherhood of Electrical Workers, Local 2295. Due to the relatively small number of retirees represented by these Unions, the fact that there were not as of October 1, 1978, significant negotiating differences between MDC and these unions with regard to the retirement plan and the fact that UAW Local 148 had signed its agreement, MDC decided to process the increases for all retirees on October 1, 1978.

10. Prior to the service of the instant lawsuit upon MDC on approximately September 14, there had been no request for the payment of interest with regard to the retroactive retirement benefit payments by plaintiffs, or on plaintiffs' behalf by the UAW or UAW Local 148 which acted as the retirees' exclusive bargaining agents during the 1977–78 negotiations.

11. The negotiations between MDC and the UAW with regard to a new collective bargaining agreement to be applicable to the employees represented by UAW Local 148 are conducted jointly with three other UAW locals, namely Local 1093, for a bargaining unit of production and maintenance employees in Tulsa, Oklahoma; Local 73 for a bargaining unit of office employees at Tulsa, Oklahoma; and Local 1482 for a bargaining unit of production and maintenance employees in Melbourne, Arkansas. MDC's offer with regard to retroactive increases in the pension benefits were identical to each of these UAW locals and all four locals, including Local 148, accepted MDC's offer in April of 1978. The increases in retroactive benefits to January 1, 1978, with regard to the employees represented by each of these four UAW locals were paid on October 1, 1978. All of the beneficiaries received their regular benefit payments for each month January through September. It was only the increases that could not be paid until October for the reasons set forth above.

12. No claim with regard to or demand for interest has ever been made by or on behalf of any retiree represented by Local 1093, Local 73, Local 1482, or by the UAW International or by any of these three locals. The only claims for interest which have been asserted against MDC with regard to retroactive payments in 1978 are those put forward by plaintiffs in the instant lawsuit.

13. No claim for interest with regard to the increases from January through September of 1978 has ever been made by any plaintiff or anyone on plaintiffs' behalf pursuant to the appeal procedures of the Plan itself, even though plaintiffs now contend that interest is due because MDC took an unreasonable period to make the retroactive increases and even though the Plan contains comprehensive grievance and arbitration procedures for the resolution of claims such as claims that payments were not paid within a "reasonable period."

14. Section 4.4.7 of the Employe Retirement Income Plan—Hourly West under which plaintiffs are claiming provides in pertinent part:

"All benefit payments shall be made on the first day of each month. Actual payments shall begin with a reasonable period of the later of:

a. The relevant commencement date set forth in this section 4.4 or

b. The date on which the Member or former Member applies for his benefit."

15. Section 7.3 of the Employe Retirement Income Plan—Hourly West under which plaintiffs are claiming provides a comprehensive "*Appeal Procedure*" including arbitration for the benefit of:

"A Member, beneficiary or other person who believes that he is being denied or will be denied benefits to which he is entitled under the Plan . . . ."

16. Section 7.3 also contains special provisions which are applicable to plaintiffs and all other members who were included in a bargaining unit represented by the United Automobile, Aerospace and Agricultural Workers Locals 148, 1093, 1482 and 73. These special procedures provide for a Local Pension Committee to be composed of two members, one appointed by the International Union—UAW, and one by the Employe Benefits Board which is in turn appointed by the Board of Directors or the Executive Committee of the Board of Directors of MDC. Claims which cannot be resolved by the Local Pension Committee may be referred to a Central Pension Board consisting of six members, three appointed by the Employe Benefits Board and three appointed by the International Union—UAW. Subsection 7.3.12 provides specifically that:

"If the CPB [Central Pension Board] is unable to resolve any issue appealed to it

under this Section 7.3, the issue should be referred for decision to an impartial arbitrator who, at the request of the CPB, shall be named by the Federal Mediation and Conciliation Service."

17. The plaintiffs' claim that MDC's payments in October 1978, were not made within a reasonable time, could have been resolved by resort to the appeal procedure set forth in Section 7.3 of the Plan.

18. The facts with regard to MDC's payment of retroactive retirement benefits in 1980 following negotiations in that year for a new collective bargaining agreement are not comparable to the facts which existed in 1978. In 1978 the records maintained by MDC did not permit the identification of a retiree by his former union representation. Between 1978 and 1980, MDC restructured its retirement files in order to permit computerized identification of those retirees eligible for increases as a result of any specific negotiation. This restructuring of the automated data base was completed by August of 1980 and took approximately two years to accomplish. Because of this restructuring, and only for this reason, the increases in 1980 could be paid within a month and a half after the completion of negotiations. The data base which was maintained in 1978 did not contain the information necessary to make such rapid payment in 1978 or in 1972 or 1975.

19. Pursuant to a stipulation of the parties, approved by this Court on July 17, 1979, this action is properly maintained as a class action on behalf of a class defined as:

"Former employees, now retired, of McDonnell Douglas Corporation at its Long Beach, California plant whose employment was within the bargaining unit of the United Aerospace Workers Local No. 148, as previously certified by the National Labor Relations Board, and who were entitled to and received in October 1978 retroactive retirement benefits pursuant to the Employe Retirement Income Plan of McDonnell Douglas Corporation—Hourly West Plan (hereinafter 'Plan')."

20. There is no genuine issue as to any material fact set forth above, the facts having been established either by stipulation of the parties or by the affidavit filed with and in support of defendant's Motion for Summary Judgment of Dismissal, and no counter affidavit or declarations having been filed by plaintiffs.

21. The following conclusions of law insofar as they may be considered findings of fact are so found by this Court to be true in all respects.

22. From the foregoing facts, the Court concludes:

## CONCLUSIONS OF LAW

1. This is an action brought within the jurisdiction of this Court pursuant to 29 U.S.C. § 185(a).

2. Pursuant to a stipulation of the parties, approved by this Court on July 17, 1979, this action is properly maintained as a class action on behalf of a class defined as:

"Former employees, now retired, of McDonnell Douglas Corporation at its Long Beach, California plant whose employment was within the bargaining unit of the United Aerospace Workers Local No. 148, as previously certified by the National Labor Relations Board, and who were entitled to and received in October 1978 retroactive retirement benefits pursuant to the Employe Retirement Income Plan of McDonnell Douglas Corporation—Hourly West Plan (hereinafter 'Plan')."

3. The Plan contains an Appeal Procedure which includes a comprehensive grievance and arbitration procedure leading to binding arbitration by a neutral arbitrator.

4. The plaintiffs' contention that the period of time between the parties' agreement upon a new collective bargaining agreement in April 1978 and the payment of the agreed-upon retroactive increases in the retirement payments on October 1, 1978 was unreasonable is a claim which plaintiffs could and should have made through the Appeal Procedure of the Plan.

5. Plaintiffs have failed to show that they qualify under one of the exceptions to the long-established doctrine that a claimant must exhaust the grievance and arbitration procedures of agreement and that a claimant "is bound by terms of that agreement which govern the manner in which contractual rights may be enforced." *Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967). More particularly plaintiffs have failed to show any relevant facts in support of their contentions that it would have been futile to have processed their claims through the Appeal Procedure of the Plan. The times specified in such Appeal Procedure are reasonable and plaintiffs' claims could have been processed through the Appeal Procedure of the Plan considerably more quickly than plaintiffs have prosecuted the instant suit.

6. Accordingly, this action must be dismissed for failure to exhaust the internal Appeal Procedure contained in the Plan which provides the exclusive remedy to claimants such as plaintiffs.

■ 7. Alternatively, plaintiffs' action must be dismissed because the undisputed facts establish that the time interval between the parties' agreement on April 17, 1978, and the payment of the retroactive benefits on October 1, 1978, was not unreasonable. Each of the following is independently sufficient to establish the reasonableness of the time interval and to require the dismissal of this action.

a. The parties' past practice demonstrates that an interval of four to seven months had been required to implement such increases and that interest would not be paid with regard to an interval within these parameters.

b. An interval of six and one-half months was not unreasonable in light of MDC's need to complete substantial administrative work prior to implementing any change in the Plan and the further need for MDC to fulfill its bargaining obligations toward the other unions with members affected by the Plan prior to affecting any changes in the Plan.

c. The plaintiffs' exclusive bargaining representative, UAW Local 148, did not itself sign the agreement of the parties until mid-September 1978 and the retroactive payments were made on the first of the month following the signing by the Local.

d. Neither the UAW International nor Local 148, the exclusive representatives of the plaintiffs during the 1977–1978 negotiations, complained of the time interval necessary to affect payment nor sought interest with regard to the retroactive payments nor have representatives of UAW Locals 73, 1093 and 1482 which participated in the negotiations.

8. The fact that MDC was able in 1980 to make payment within one and one-half months after the completion of negotiations is not relevant to the current controversy since MDC restructured its automated data base over a two year period between 1978 and August 1980 in order to be able to permit the identification of a retiree by his former union representative. Nor is it relevant that the administrative work necessary to implement the changes in the Plan was completed in 69 working days since payment of the increases required not only the completion of the administrative work but also required that there have been sufficient negotiations with the other unions with members affected by the Plan. Nor is defendant's reliance upon its obligation to bargain in good faith with its other unions factually inconsistent because defendant made payment on October 1, 1978, before it had in fact concluded negotiations with all its unions. By that date, defendant had reached agreement with all but four of its bargaining units and as to those four defendant had had sufficient negotiations to satisfy its obligation to bargain in good faith. Plaintiffs' reliance upon the Agreement with respect to Joint Administration of Pension Plan is similarly misplaced. In the first place, the Agreement was never properly identified or otherwise properly placed before the Court. However, even had the Agreement been before the Court, plaintiffs have not provided any evidence that the Agreement was intended to be

interpreted or that it had been interpreted by the parties to require that defendant maintain Plan membership records which designated a member's former union representation. Indeed, the evidence is to the contrary since it is apparent from the Agreement itself that it was entered into in 1972, yet the Union was shown to have negotiated with the defendant in 1975 and 1978 with the knowledge that the defendant could not implement increases resulting from their negotiations (including the 1978 negotiations) until it had fulfilled its bargaining obligations towards the other unions with members in the Plan, this being necessary because the Plan records did not contain former union identification. No other facts have been relied upon by plaintiffs as establishing the unreasonableness of the time interval prior to payment on October 1, 1978. Accordingly, plaintiffs have cited no relevant facts in support of their contention that the interval in 1978 was unreasonable.

9. There is no other basis for the award to plaintiffs of interest in light of the Findings of Fact set forth above to the effect that the parties' past practice was not to pay interest on retroactive increases in retirement benefits, there was no request by the Union for, or discussion of the payment of, interest during the parties' 1977–1978 negotiations and there was no agreement by MDC during said negotiations to pay interest.

10. Defendant is entitled to its costs.

11. There is no genuine issue as to any material fact set forth above, plaintiffs having filed no counter-affidavits or counter-declarations, and moving party is entitled to judgment as a matter of law. Federal Rule of Civil Procedure, Rule 56(e); *Smith v. Mack Trucks, Inc.*, 505 F.2d 1248, 1249 (9th Cir. 1974).

12. Any conclusions of law contained in the Findings of Fact are incorporated herein by reference.

Let judgment be entered accordingly.